Bertha Ines **QUEVEDO–GAITAN**, Plaintiff

v.

**SEARS ROEBUCK DE PUERTO RICO, INC.**, Defendant.

**Civil No. 07–1371(JP).**

United States District Court, D. Puerto Rico.

Feb. 29, 2008.

Maria T. Juan–Urrutia, Esq., Escanellas & Juan, San Juan, PR, for Plaintiff.

Mariela Rexach–Rexach, Esq., Zahira Díaz–Vázquez, Esq., Schuster & Aguiló LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

JAIME PIERAS, Jr., Senior District Judge.

Before the Court is Defendant Sears Roebuck de Puerto Rico, Inc.'s ("Sears") motion for summary judgment (No. 23), Plaintiff Bertha Inés Quevedo–Gaitán's ("Quevedo") opposition thereto (No. 30), and Defendant Sears' reply brief (No. 34). Plaintiff Quevedo filed the instant complaint against her employer, Defendant Sears, alleging that she suffered harassment and discrimination due to her requests for a reasonable accommodation for her disability and her age. Plaintiff also alleges that Sears retaliated against her because of her opposition to Sears' unlawful employment practices and Sears' unwillingness to provide her with a reasonable accommodation. Quevedo alleges that Defendant Sears' actions violated the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as several related Puerto Rico laws. Additionally, Plaintiff Quevedo alleges that Sears violated her rights under an unspecified provision of the Constitution of the United States of America, and her right to dignity under an unspecified provision of the Constitution of the Commonwealth of Puerto Rico. For the reasons stated herein, Defendant Sears' motion for summary judgment (**No. 23**) is **GRANTED**.

## I. FACTUAL ALLEGATIONS

Plaintiff Quevedo, age sixty-two, began working for Defendant Sears on Septem-

ber 23, 1986, as a sales person in the Plaza las Américas store. For her first twelve years with the company, Plaintiff worked as a part-time assistant in the housewares department. She was promoted to a full-time position, and for nearly four years worked in the division of women's plus sizes and maternity clothing. She was then transferred to be a full-time cashier. Plaintiff alleges that her job performance was excellent.

Approximately sixteen years ago, Plaintiff Quevedo was diagnosed with Systemic Lupus Erythematosus ("Lupus"), a condition where the immune system attacks healthy cells and tissues, which can cause damage to joints, blood vessels and other organs. Her condition allegedly affects her activities of daily living, including sleeping, eating, and household chores.

At all times during her employment, Plaintiff Quevedo alleges that she informed Sears about her Lupus condition by providing verbal and written documentation and medical certificates. She allegedly requested reasonable accommodations, including frequent bathroom breaks, permission to sit down while working, leave in order to rest and receive treatment, and changes in her job functions. Plaintiff Quevedo alleges that Defendant Sears never provided her with any type of accommodation.

Plaintiff Quevedo alleges that immediately after she requested reasonable accommodations, Sears responded with a discrimination and harassment campaign against her. Sears' top officers made derogatory comments about her, and otherwise ignored her. The Operational Manager threatened her with termination, and told her she was worthless and sick. Plaintiff alleges that said harassment and discrimination was based on her age and disability, and caused Quevedo to suffer emotional and physical damages. Quevedo

has been on leave of absence from work since May 20, 2006.

Defendant Sears alleges that it has policies in place designed to prevent discriminatory conduct in the workplace, and that Sears provided Plaintiff with the requested reasonable accommodations. Sears alleges that it permitted Quevedo to perform her duties sitting down, and allowed her to take extended breaks as soon as she requested them. Defendant alleges that in her twenty years of employment at the store before this lawsuit, Plaintiff never complained of discriminatory treatment or a hostile work environment. Defendant Sears argues that Plaintiff Quevedo suffered no adverse employment actions.

## II. *MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE*

The following material facts were deemed uncontested by all parties hereto at the August 22, 2007, Initial Scheduling Conference (No. 12).

1. Plaintiff Bertha Quevedo began her employment with Sears, at the Plaza las Américas store, on September 23, 1986.

2. Quevedo was diagnosed with Systemic Lupus Erythematosus in 1992.

3. There are no written reprimands in Quevedo's personnel file at Sears.

4. Quevedo worked as a part-time attendant in the housewares department at Sears. She was promoted to a full-time position and worked in the division of women's plus size and maternity clothing. Afterwards, Quevedo was transferred to a full-time cashier position.

5. Sears has established policies designed to prevent discriminatory conduct in the workplace and to provide a complaint mechanism for em-

ployees who feel that they are being discriminated against.

6. Quevedo has been on leave of absence since May 20, 2006.

7. Quevedo filed a discrimination charge with the Puerto Rico Anti-discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC") on September 29, 2006.

8. Quevedo filed the instant complaint on May 1, 2007.

The following are deemed uncontested facts by the Court as they were included in Defendant's motion for summary judgment or Plaintiff's opposition thereto and were agreed upon, or were properly supported by evidence and not sufficiently opposed:

A. Plaintiff's responsibilities as cashier required that she efficiently complete sales and service transactions at the center aisle, department, or exit cash wraps and that she enhance the customer's experience through courteous, efficient, and helpful interaction with customers. The job included the following essential functions: (a) accurately and efficiently complete customer transactions at the point of sale; (b) deliver superior customer service; (c) consistently execute operational and selling processes, and ensure sales performance standards are met; (d) assist in handling and resolving customer issues; (e) follow all applicable laws, regulations and company policies; and (f) performing miscellaneous duties as assigned.

B. On or around December 16, 1992, Plaintiff was diagnosed with Lupus by Dr. María L. Recurt, rheumatologist, to whom plaintiff was referred by her dermatologist, Dr. María Betancourt. At that time, there was no evidence that the Lupus condition had affected any of Plaintiff's major organs.

C. On or around August 1, 1995, Plaintiff was diagnosed with spastic colon by Dr. Cristóbal Gómez–Duarte ("Gómez"). Spastic Colon, also known as Irritable Bowel Syndrome ("IBS"), is a condition in which the colon presents alterations in the movements, such as spasms, diarrhea, or constipation. In Dr. Gómez's opinion, Plaintiff's IBS is moderate and is not related to her Lupus condition.

D. As a result of her IBS, Dr. Gómez instructed Plaintiff to eat three times a day, more or less at the same time every day, to avoid eating spicy or fatty foods, and to avoid laying down after eating.

E. Other than the foregoing, in Dr. Gómez's opinion, Plaintiff's IBS does not limit her in her daily activities, such as walking or sleeping. In Dr. Gómez's opinion, Plaintiff is fine as long as she takes her medication and follows his dietary recommendations.

F. According to Dr. Kermit Richiez ("Dr. Richiez"), Defendant Sears' expert in Gastroenterology, Plaintiff's IBS is mild to moderate and does not cause any impairment in her daily life activities. In Dr. Richiez's opinion, Plaintiff's IBS is associated with constipation, and Plaintiff never complained to Dr. Gómez about having symptoms of either urgency or incontinence. Furthermore, according to Dr. Richiez, Plaintiff's IBS does not require an accommodation other than what would be offered to a normal person without IBS.

G. On or around November 13, 2000, Plaintiff began receiving treatment for her Lupus condition with Dr. Luis Vilá ("Dr. Vilá"), Rheumatologist. Dr. Vilá diagnosed Plaintiff with Systemic Lupus Erythematosus and describes her condition as mild to moderate, as Plaintiff's major organs have not been affected by her Lupus condition. Dr. Vilá has been treating Plaintiff's condition with corticoidsteroids ever since.

H. In Dr. Vilá's opinion, Plaintiff's Lupus is stable and/or partially controlled inasmuch as she has not suffered any impairment in her major organs, her symptoms are tolerable, and from June 2006 to July 2007, Plaintiff has been asymptomatic. Dr. Vilá further stated in his deposition that Plaintiff's liver is working well as there are no signs of inflammation.

I. According to Dr. Vilá, Plaintiff's Lupus does not render her unable to work, walk, sleep, or perform her household chores. In addition, Dr. Vilá stated in his deposition that Plaintiff's Lupus condition does not prevent her from interacting with people, working as a cashier, or folding clothing.

J. Plaintiff can clean her house by apportioning her cleaning chores across several days.

K. Plaintiff can walk, care for herself, drive an automobile, and lift objects that weigh less than twenty pounds. In addition, Plaintiff has no difficulty in walking up and down from eight to ten stairs. Plaintiff stated that she has no limitation in her physical ability to eat and that she can sleep facing up and using a pillow under her knees to avoid back pain.

L. Plaintiff had no difficulty in performing her job duties and/or responsibilities as a cashier, as required by her job description, except that she claims that due to her Lupus condition, she needs breaks to rest and to go to the bathroom.

M. Cashiers enjoy a meal period between the second and fifth consecutive hour of work and a fifteen minute break every two hours of work.

N. Sears employs at least two cashiers at the Plaza Las Américas store who are responsible for substituting cashiers during their meal periods and fifteen minute breaks based on a daily schedule prepared by said employees.

O. The store also had a "floater" to provide assistance as needed to the cashier areas.

P. Plaintiff never provided Sears with a medical certificate which recommended and/or stated that her condition required that she be immediately relieved from her work to go to the bathroom at the exact time every day.

Q. According to Plaintiff's treating gastroenterologist, Dr. Gómez, Plaintiff's condition does not necessitate that she have a snack between her meals.

R. Plaintiff admits that on a regular day of work, she would take her fifteen minute break approximately after two hours of work had elapsed. When there was an emergency at the store or employees were absent from work, however, her fifteen minute break could be delayed or cancelled.

S. Several cashiers work at the main cash register of the Defendant's Plaza las Américas store.

T. In Dr. Gómez's opinion, Plaintiff should not have a problem waiting fifteen or twenty minutes for someone to relieve her from duty to go to the bathroom unless, on that particular day, she is suffering a spasm, which is the exception.

U. At all times relevant to the complaint, Plaintiff did not request a reasonable accommodation pursuant to Sears' policies.

V. Plaintiff admitted that she never requested a chair from Sears' management and that she performed her duties sitting down when, at times, she borrowed a chair from the shoe department.

W. During the year 2004, Plaintiff did not request a transfer to the furniture department pursuant to Sears' job posting policy, which requires an employee to file a written application for any available position.

X. At Sears, the commission sales positions are the highest paid non-exempt sales positions in the company.

Y. On August 26, 2005, Plaintiff received a written reprimand from Desiree González ("González"), former Operations Manager, for unprofessional conduct towards a customer. Gonzalez' reprimand was not related to Plaintiff's medical condition, but to the customer's complaint.

Z. On May 20, 2006, there was an incident between Quevedo and another cashier named Yessik Cotto ("Cotto") related to a complaint filed by Cotto whereby the latter alleged that Quevedo had yelled at her and had treated her in an unprofessional manner in front of customers. Both Quevedo and Cotto were reprimanded.

aa. According to Plaintiff's treating psychiatrist, Dr. María Román–Orta, Plaintiff's major depression did not pose any significant limitation nor caused any impairment to Plaintiff prior to May 2006.

bb. At no time during Plaintiff's employment at Sears did Sears' Human Resources Office receive a written discrimination complaint from Plaintiff.

cc. Plaintiff Quevedo was born on November 11, 1944.

dd. None of Defendant Sears' officers ever held any type of meeting with Plaintiff Quevedo to discuss alternatives for reasonable accommodation.

## III. LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact");

*Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman,* 985 F.2d at 1116.

## IV. *ANALYSIS*

Plaintiff Quevedo alleges that Defendant Sears discriminated against her under the ADA and its Puerto Rico counterpart, Puerto Rico Law Number 44 of June 2, 1985, P.R. LAWS ANN. TIT. 1, Section 501 ("Law 44") because of her Lupus, IBS, and depression, and under the ADEA and its Puerto Rico counterpart, Puerto Rico Law Number 100 of June 30, 1959, 29

L.P.R.A. sec. 146 *et seq.* ("Law 100"), because of her age. She also brings a retaliation claim under Title VII, the ADA and Puerto Rico Law Number 115 of December 20, 1001, 29 L.P.R.A. Section 194 *et seq.* ("Law 115"). Finally, Plaintiff Quevedo brings claims under unspecified sections of the United States Constitution and the Constitution of the Commonwealth of Puerto Rico.

### A. *Plaintiff's ADA and Law 44 Claims*

 Plaintiff Quevedo alleges that Defendant Sears discriminated against her on the basis of her disabilities: Lupus, IBS, and depression. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges." 42 U.S.C. § 12111(a). Law 44 is the state-law counterpart to the ADA, and was amended in 1991 to harmonize with the ADA. P.R. LAWS ANN. TIT. 1, Section 507(a). Accordingly, Plaintiffs' Law 44 disability claim will be evaluated pursuant to ADA standards, and all references herein to the ADA shall also be deemed references to Law 44.

Defendant Sears argues that Plaintiff Quevedo cannot establish a *prima facie* case of disability discrimination under the ADA because Plaintiff is not "disabled" under the statute, she did not make a request for reasonable accommodation, and she was not subjected to a hostile work environment or adverse employment action because of her disabilities. A plaintiff bears the burden of establishing a *prima facie* case of disability discrimination. *See Gillen v. Fallon Ambulance Serv.,* 283 F.3d 11, 29–30 (1st Cir.2002); *Higgins v.*

*New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999). A *prima facie* case of disability discrimination requires the plaintiff to prove the following: first, she was disabled within the meaning of the Act; second, with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, the employer discharged her or otherwise adversely affected her employment because of her disability. *See Criado v. IBM Corp.,* 145 F.3d 437, 441 (1st Cir.1998); *see also Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, n. 3 (1st Cir.1999). If a plaintiff is unable to establish any element of a *prima facie* case, summary judgment should be entered in favor of the defendant. *See Lebron–Torres v. Whitehall Labs.,* 251 F.3d 236, 239 (1st Cir.2001).

The term "disability" means, with respect to an individual, "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Plaintiff Quevedo argues that her Lupus and IBS conditions, as well as her depression, qualify her as disabled under the ADA. Defendant Sears does not dispute that the Plaintiff suffers from these three conditions, and that these conditions qualify as physical impairments for purposes of the ADA. However, Sears argues that none of Plaintiff's conditions substantially limit any of her major life activities. The United States Supreme Court has stated that "[m]erely having an impairment does not make one disabled for the purposes of the ADA," and that a plaintiff must demonstrate that "the impairment limits a major life activity." *Toyota Motor Mfg., Kentucky Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The ADA regulations define "major life activity" as includ-

ing functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i). The Court will now use these guidelines to determine whether Plaintiff's Lupus, IBS and depression conditions qualify her as disabled under the meaning of the ADA.

### 1. Whether Plaintiff Quevedo's Lupus is a "Disability" under the ADA

Merely claiming a disability is not enough to fulfill the ADA requirement of "substantial limitation" of a major life activity. *See Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162, 1167 (1st Cir.2002). The Court must determine whether a reasonable jury could find that, during the time period relevant to her ADA claims, Plaintiff Quevedo's Lupus condition substantially limited one or more of her major life activities. In conducting this inquiry, the Court must consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, and the expected permanent or long-term impact of or resulting from the impairment. *See* 29 CFR § 1630.2(j).

The Supreme Court has held that, "the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *See Toyota Motor Mfg., Ky., Inc.,* 534 U.S. at 198, 122 S.Ct. 681 (internal citations omitted); *see also* 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. . . . The determination of whether an individual is substantially limit-

ed in a major life activity must be made on a case by case basis."); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (whether a plaintiff has a disability under the ADA involves an "individualized inquiry").

▮ In construing the scope and proper application of the ADA, the Supreme Court held that the phrase "substantially limits" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc.,* 534 U.S. at 197, 122 S.Ct. 681. The Supreme Court has also held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Id.* at 198, 122 S.Ct. 681. In short, to demonstrate that an individual falls within the scope of the ADA, that individual bears a substantial burden of proof. *See, e.g., Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.,* 258 F.3d 30, 33 (1st Cir.2001) (holding that to prevail, the plaintiff must establish that her impairment "was profound enough and of sufficient duration . . . to hamper her ability" to engage in one or more major life activities).

▮ There is no dispute that Plaintiff's Lupus is a chronic and lasting condition. However, the Court must determine whether Plaintiff's *specific* symptoms stemming from her Lupus condition impair her major life activities. *See Rodriguez v. Loctite P.R., Inc.,* 967 F.Supp. 653, 660 (D.P.R.1997) (holding that the manifestations of the plaintiff's Lupus condition— occasional renal problems, a single incident of an oral ulcer, arthritis, one seizure episode—did not limit her major life functions); *see also Temple v. Bd. of Educ.,* 322 F.Supp.2d 277, 280 (D.N.Y.2004) (hold-

ing that the plaintiff's Lupus condition did not impair any substantial life activity where the plaintiff could care for herself, do household and personal chores, bathe, brush her teeth, wash her face, do laundry, cook, drive using glasses, and garden). A plaintiff suffering from Lupus does not have a "disability" under the ADA when her physical impairments are intermittent and when none of her major life activities are substantially limited so long as she receives the correct regimen of medication. *Smith v. Quintiles Transnational Corp.,* 509 F.Supp.2d 1193, 1207 (D.Fla.2007).

▮ Plaintiff Quevedo has not demonstrated that her Lupus condition substantially limits any of her major life activities. Plaintiff stated that she can walk, care for herself, drive an automobile, and lift objects that weigh less than twenty pounds. In addition, Plaintiff has no difficulty in walking up and down eight to ten stairs. Plaintiff can clean her home by apportioning her chores across several days. Plaintiff's sleep is not affected if she sleeps face up and uses a pillow under her knees to avoid back pain.

Plaintiff's treating physician, Dr. Vilá, described Plaintiff's condition as mild to moderate, as Plaintiff's major organs have not been affected by her Lupus condition. Dr. Vilá has been effectively treating Plaintiff's condition with corticoidsteroids. According to Dr. Vilá, Plaintiff's Lupus does not render her unable to work, walk, sleep, or perform her household chores.

In addition, Dr. Vilá stated in his deposition that Plaintiff's Lupus condition does not prevent her from interacting with people, working as a cashier, or folding clothing. Plaintiff stated that she had no difficulty in performing her job duties and responsibilities as a cashier, as required by her job description, except that she claims that due to her Lupus condition, she needs

breaks to rest and to go to the bathroom. Plaintiff's Lupus was diagnosed in 1992, and she continued to work at Sears for approximately fourteen years before the filing of this complaint without any documentation of negative job performance in her file.

Plaintiff Quevedo, in her opposition to Defendant's motion for summary judgment, did not address Defendant Sears' arguments that Plaintiff was not disabled by Lupus under the requirements of the ADA. Even considering the evidence in the light most favorable to Plaintiff Quevedo, the Court cannot find that Plaintiff's Lupus condition substantially interfered with any of her activities of daily living. Accordingly, the Court determines there is no genuine issue as to whether Plaintiff's Lupus constitutes a disability under the ADA.

### 2. Whether Plaintiff Quevedo's IBS is a "Disability" under the ADA

The Court must conduct the same analysis in reference to Plaintiff Quevedo's IBS condition. That is, given that Defendant Sears is willing to accept that Plaintiff Quevedo suffers from this condition, and that IBS qualifies as a physical impairment for purposes of the ADA, the Court must look to whether Plaintiff's IBS substantially limits any of her activities of daily living. Once again, Plaintiff did not dispute Defendant's arguments that Plaintiff's manifestations of IBS do not qualify as a disability under the ADA.

IBS, sometimes called nervous stomach or spastic bowel, is a painful, non-life-threatening condition involving accumulations of gas in the colon. *Dunning v. Kerzner*, 910 F.2d 1009, 1010 (1st Cir. 1990). The Court must examine Plaintiff Quevedo's specific manifestations of IBS to determine whether her activities of daily living are substantially limited by the con-

dition. *See Sutton*, 527 U.S. at 483, 119 S.Ct. 2139. Plaintiff Quevedo claims that her IBS substantially limits her activities of daily living by affecting the foods she can eat and by requiring her to make frequent bathroom visits for bowel movements.

Courts have held that IBS can substantially limit an individual's activities of daily living where a plaintiff suffers extremely intense and debilitating digestive problems. *See Maziarka v. Mills Fleet Farm*, 245 F.3d 675 (8th Cir.2001) (holding that the plaintiff's IBS qualified as a disability under the ADA where the plaintiff missed work on average of two days per month because he was bedridden, and where the plaintiff's "unusually severe" condition prevented from leaving his home to go to work, performing manual tasks, or interacting with supervisors, co-workers, and store patrons). Courts have held that a plaintiff whose IBS is so severe that she must work nearby a bathroom for immediate access if she feels the urge to go, in order to avoid frequent and uncontrollable bowel movements, presents enough evidence of a substantial limitation to survive summary judgment. *See Workman v. Frito–Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999). However, other courts have held that merely needing to be near a bathroom because of an intestinal condition is not a limitation that rises to the level of severity, frequency and duration required for a finding of a disability under the ADA. *Sacay v. Research Found. of the City Univ. of N.Y.*, 193 F.Supp.2d 611, 629 (D.N.Y.2002).

█ In the opinion of Dr. Gómez, Plaintiff's treating physician, Plaintiff's IBS is moderate. As a result of her IBS, Dr. Gómez instructed Plaintiff to eat three times a day, more or less at the same time every day, to avoid eating spicy or fatty foods, and to avoid laying down after eating. Other than the foregoing dietary re-

strictions, in Dr. Gómez's opinion, Plaintiff's IBS does not limit her in her daily activities, such as walking or sleeping. In Dr. Gómez's opinion, Plaintiff's lifestyle is not severely impacted as long as she takes her medication and follows his dietary recommendations. The evidence shows that Plaintiff should not have a problem waiting fifteen or twenty minutes to use the bathroom, unless on a particular day she is suffering a spasm, which is the exception.

Taking the evidence pertaining to Plaintiff's IBS condition in the light most favorable to the Plaintiff, there is no genuine issue of fact as to whether Plaintiff's IBS qualifies as a disability under the ADA. The Court holds that Plaintiff has failed to show that her altered diet and need for frequent bathroom breaks as a result of her IBS constitute a substantial limitation on her activities of daily living.

### 3. Whether Plaintiff Quevedo's Depression is a "Disability" under the ADA

As to Plaintiff's Quevedo's depression, the Court likewise holds that it does not constitute a disability under the ADA. The First Circuit has recognized depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law. *See Calero–Cerezo v. U.S. DOJ*, 355 F.3d 6, 21 (1st Cir.2004); *Criado v. IBM Corp.*, 145 F.3d 437, 442 (1st Cir.1998). However, again, depression only qualifies as a disability if it substantially limits a major life activity. *See Calero–Cerezo*, 355 F.3d at 21. As shown above, Plaintiff Quevedo testified that she can walk, care for herself, drive an automobile, and lift objects that weigh less than twenty pounds. Further, Plaintiff's treating physician testified in her deposition that Plaintiff's depression did not pose any significant limitation or impairment to Plaintiff prior to the time of the filing of the complaint. There is no evidence on the record that Plaintiff's depression has interfered with her ability to work, or any of her other major life activities. As such, there is no genuine issue as to whether Quevedo's depression substantially limits a major life activity causing her to be disabled under the ADA.

Because Plaintiff Quevedo is not disabled as defined by the ADA, she fails to make a *prima facie* case of disability discrimination, and summary judgment as to her disability discrimination claim under the ADA and Law 44 is granted.

### B. Age Discrimination in Employment Act ("ADEA") and Law 100

Plaintiff Quevedo also brings suit under the ADEA and Law 100 alleging that she was discriminated against on the basis of her age. The ADEA states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 17 (1st Cir.2006).

To establish a *prima facie* case of age discrimination, an ADEA claimant must adduce evidence that: (1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer did not treat age neutrally. *Hoffman v. Applicators Sales & Serv.,*

*Inc.*, 439 at 17, citing *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 68 (1st Cir.2002). The fourth element requires the plaintiff to produce evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. *Rivera–Aponte v. Rest. Metropol # 3, Inc.*, 338 F.3d 9, 11 (1st Cir.2003). The *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *Gonzalez,* 304 F.3d at 69–70. After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." *Id.* at 70. If the employer meets this burden then the plaintiff must demonstrate that the employer's articulated reason is mere pretext for discriminatory animus. *Id.*

■■■ Plaintiff Quevedo satisfies the first prong of her *prima facie* case, as she was sixty-two years of age when the complaint was filed and, therefore, is a member of the protected class. Plaintiff Quevedo also fulfills the second prong of her *prima facie* case, in that there were no written reprimands in her personnel file, and there is no further evidence on the record that Plaintiff's job performance was sub-par. That is, there is nothing in the record to indicate any negative job performance by Plaintiff Quevedo during the approximately twenty years she worked at Sears before this lawsuit was filed.

■■■ However, Plaintiff failed to prove the last two prongs of her *prima facie* case of age discrimination. In terms of the adverse employment action, Plaintiff failed to provide the Court with sufficient evidence showing her leave of absence was predicated on discriminatory acts related to her age. Although Plaintiff alleges that she suffered insults by another Sears employee because of her age, she could only point to derogatorily being called "the ex-

ecutive" once in 1989. Apart from her general allegation of derogatory comments based on her age, Plaintiff provides no specific detail as to how Defendants discriminated against her because of her age.

■■■ In her opposition to summary judgment, Plaintiff claims that Sears terminated Plaintiff in October 2007, and replaced her with a worker who is approximately twenty years of age. The Court disregards this assertion, considering Plaintiff failed to amend her complaint to include any action, including the above, taken by Defendant Sears after the filing of the complaint. The Court agrees with Defendant that at all times relevant to the complaint, Plaintiff failed to create an inference that Defendant Sears took an adverse employment action against Plaintiff Quevedo on account of her age. The Court therefore grants summary judgment as to Plaintiff's ADEA claim and Law 100 claim.

### C. Retaliation under the ADA and Law 115

Plaintiff Quevedo brings claims of retaliation under Title VII, the ADA, and Law 115. The Court will consider each in turn.

#### 1. Retaliation under Title VII

■■■ First, the Court will briefly address Plaintiff's retaliation claim under Title VII. Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e–2(a)(1). Defendant moves the Court to dismiss Plaintiff Quevedo's Title VII claim. It is important to note that although Plaintiff brings a retaliation claim under Title VII, she has not plead any

underlying Title VII claim. It is not the Court's prerogative to sort through the parties' arguments in an effort to decipher their meaning. Plaintiff has not alleged discrimination based on her race, color, religion, sex, or national origin. Accordingly, the Court will enter judgment dismissing Plaintiff Quevedo's Title VII retaliation claim with prejudice.

### 2. Retaliation under the ADA and Law 115

The Court will now consider Plaintiff Quevedo's claims of retaliation under the ADA and Law 115. The ADA prohibits retaliation against any individual "who made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). It further states that it shall be "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this Act." 42 U.S.C. § 12203(b). Law 115 likewise protects employees who provide or attempt to provide testimony or information in an administrative, judicial or legislative forum. P.R. LAWS ANN. TIT. 29, § 194a(a).

An ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability claim. *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997), citing *Mesnick v. General Elec., Co.*, 950 F.2d 816, 827 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). To establish a claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action. *Wright*, 352 F.3d at 478; *Calero–Cerezo*, 355 F.3d at 25.

As to the first prong of the test, Plaintiff Quevedo engaged in protected conduct when she filed a discrimination charge with the Puerto Rico ADU and the EEOC on September 29, 2006. However, at the time that Plaintiff filed these charges, she was already on a leave of absence from her employment with Defendant Sears, which began on May 20, 2006. Plaintiff did not return to work after starting her leave of absence. She was eventually terminated in October 2007, but the termination is beyond the scope of the complaint, as discussed above. Given that Plaintiff was already on a leave of absence when she filed her charges with the ADU and the EEOC, there was no change in Plaintiff's status as a result of the charges she filed with the ADU and the EEOC at all times relevant to the complaint.

Although it is not clear from the Plaintiff's opposition brief, she appears to be arguing that she suffered a constructive discharge (*i.e.*, an adverse employment action) as a result of requesting a reasonable accommodation. That is, the protected conduct was the request for reasonable accommodation, rather than the filing of the charges with the ADU and the EEOC. There is simply no support for this proposition in the record. Although Plaintiff alleges that she made numerous requests for reasonable accommodation, she never made this request in compliance with Sears' policy—in writing. Moreover, Plaintiff fails to support any argument of constructive discharge. She chose to take a leave of absence after she was reprimanded, along with another Sears employee, for her behavior in front of customers. This reprimand was not related to her alleged disability or to her requests for reasonable accommodation. Taking all facts in the light most favorable to Plaintiff Quevedo, the Court cannot find a causal connection between Plaintiff's alleged re-

quest for reasonable accommodation and her subsequent alleged constructive discharge. Thus, Plaintiff's retaliation claims under the ADA and Law 115 fail as a matter of law. The Court will dismiss these claims with prejudice.

### D. Claims under the United States Constitution

Plaintiff claims in the complaint that Defendant Sears' acts and omissions violated her rights under the Constitution of the United States of America. However, she provides no further mention of the specific violations alleged. Plaintiff's claims for relief stem from the ADA and the ADEA, and not from any particular constitutional provision or amendment. Further, Plaintiff Quevedo failed to address any constitutional violations in her opposition to Defendant's motion for summary judgment. The Court therefore dismisses Plaintiff's claims for violations of the United States Constitution.

### E. Claims under the Puerto Rico Constitution

 Plaintiff claims in the complaint that Defendant Sears' acts and omissions violated her right to dignity under the Constitution of the Commonwealth of Puerto Rico. Defendant Sears argues that Plaintiff's claims fail because they lack the specificity required to prove a constitutional claim for a violation of Plaintiff's rights in the workplace. Defendant further argues that Plaintiff Quevedo must present evidence of Sears' concrete actions which infringed upon her private life. *See Segarra Hernandez v. Royal Bank de Puerto Rico*, 145 D.P.R. 178, 203 (1998). Plaintiff Quevedo did not refute Defendant's arguments pertaining to her Puerto Rico constitutional claims in her opposition to summary judgment. The Court finds that, based on the facts in the record, Plaintiff has not sufficiently alleged specific facts demonstrating that Defendant Sears infringed on her rights to privacy or dignity in the workplace. As such, judgment will be entered dismissing Plaintiff's Puerto Rico constitutional claims with prejudice.

### V. CONCLUSION

In conclusion, the Court **GRANTS** Defendant Sears' motion for summary judgment (No. 23). A separate judgment will be entered dismissing Plaintiff Quevedo's claims under the ADA, the ADEA, Title VII, the United States Constitution, the Constitution of the Commonwealth of Puerto Rico, and Puerto Rico Laws 44, 100, and 115, with prejudice.

**IT IS SO ORDERED.**