# United States Court of Appeals
## For the First Circuit

No. 13-2366

CARMEN PLANADEBALL,

Plaintiff, Appellant,

v.

WYNDHAM VACATION RESORTS, INC.,

Defendant, Appellee,

SHAWYN MALEY,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Thompson, Barron, and Lipez,
Circuit Judges.

Juan R. Dávila Díaz, with whom Mendoza Law Offices and Enrique J. Mendoza-Mendez were on brief, for appellant.
Shiara L. Diloné Fernández, with whom Schuster Aquiló LLC and Carl Schuster were on brief, for appellee.

July 17, 2015

**LIPEZ, Circuit Judge**.  Carmen Planadeball appeals the district court's grant of summary judgment on her claim of retaliation against Wyndham Vacation Resorts, Inc. ("Wyndham") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Planadeball contends that Wyndham retaliated against her for making informal and formal complaints against her then-supervisor Shawyn Maley after he subjected her to a hostile work environment on the basis of her race and national origin.  Adopting the magistrate judge's recommendation, the district court granted Wyndham's motion for summary judgment.  Because we agree that Planadeball has not presented sufficient evidence to establish a retaliation claim under Title VII, we affirm.

## I.

We recount the facts in the light most favorable to Planadeball, who was the non-moving party at summary judgment.  See Santana-Concepción v. Centro Médico del Turabo, Inc., 768 F.3d 5, 7 (1st Cir. 2014).

Planadeball was born in Puerto Rico and identifies as Hispanic.  She was hired by Wyndham in June 2009 as a sales representative at the Bonnet Creek Resort in Orlando, Florida.  Planadeball and the other sales representatives sold family vacation packages and vacation ownership products.  In January 2010, she was transferred to the regional office at the Wyndham Río Mar Beach Resort in Río Grande, Puerto Rico.  At the time, she was

supervised by sales manager Ángelo Sánchez.  In December 2010, Wyndham hired Shawyn Maley as a sales manager in the Río Grande office.  Subsequently, Planadeball was supervised by both Sánchez and Maley.  On February 15, 2011, Sánchez began a period of leave under the Family and Medical Leave Act, making Maley the sole supervisor for Planadeball and the other Río Grande sales representatives.

During his time as the sales manager of the Río Grande office, Maley made many derogatory comments about Puerto Ricans and African-Americans in front of Planadeball and her co-workers.  For example, he said that the sales representatives should not waste their time with Puerto Rican customers because they "don't have any money."  He also called Puerto Ricans "stupid" and said that they "don't have education."  He referred to Puerto Rico as "a trash can" and said "that everything is dirty."  Additionally, he referred to African-Americans as "niggers" and instructed the sales representatives to avoid dealing with them because "they were more than likely to have bad credit."

Maley also made many sexist comments, directed primarily at Planadeball's co-workers Michelle Pérez and London Miles.  For example, he said, "the perfect woman is [Miles's] tits . . . and [Pérez's] ass."  He would also repeatedly call Miles into his office to discuss his sexual relationships with women, make

derogatory comments about other women's bodies, and stare at her breasts.

Sometime in February or early March 2011, Planadeball went to Maley's office on two to three occasions to complain to him about the way he was treating her, Pérez, and Miles. She told Maley to stop making derogatory comments and "that it was inappropriate to speak to my friends the way he was talking to them." On one occasion, Maley responded by calling Planadeball a liar and throwing her out of his office. Around the same time -- she did not recall exactly when -- Planadeball also complained about Maley's conduct to Richard Wieczerzak, Wyndham's Vice President of Sales and Marketing for South Florida and Puerto Rico. She told Wieczerzak that "[t]hings have been -- that are happening, are inappropriate, things that Shawyn Maley is saying have been very inappropriate." However, Planadeball did not file a complaint about Maley to the Human Resources Department because she feared that she would lose her job.

From March 15 to April 1, 2011, Planadeball took a medical leave of absence so she could recover from gallbladder surgery. Days after Planadeball had returned, she met with Maley to discuss her work performance. During the meeting, Maley told her "that [she] wasn't selling, that [her] numbers were very low." In her deposition, Planadeball admitted that her sales numbers "were not very good" at the time. After the meeting, Maley

-4-

approached Planadeball's desk and "started yelling at [her] in front of [her] friends." Maley told her, "You step up or you step out and -- and that's the way it is." Maley was so close to Planadeball that she was afraid that he was going to hit her.

Shortly after this incident, Planadeball gave a ride to work to David Saliceti, another sales representative. During the ride, Saliceti told her, "Be careful, because [Maley] has been saying that the next one who's going to be fired is you." While they were talking in the car, Saliceti received a text message from Maley. The text message stated, "You better tell Carmen that either she steps up or steps out." Saliceti showed Planadeball the message soon after receiving it.

Planadeball and the other sales representatives received commissions on the sales they made for Wyndham. Sometime in April 2011, a few days after returning from her medical leave, Planadeball noticed that her commission check was subject to a chargeback of $4,000. She inquired about the chargeback to Maley, who "couldn't give [her] any details or any information." She was later informed by an administrator that a $40,000 sale that she had previously closed had been cancelled by corporate headquarters. Someone in corporate subsequently entered into a sale with the same client and received the commission on the sale. In addition to impacting negatively Planadeball's sales numbers, the chargeback

resulted in "a lot of pain and suffering with regards to [her] finances."

On April 29, 2011, Pérez complained to Wieczerzak about Maley's conduct. Wieczerzak relayed Pérez's complaint to Lisette Lama, Wyndham's Human Resources Director. On May 2, 2011, Pérez and Miles met with Lama and Assistant Human Resources Director Kerania Olmo. Lama and Olmo subsequently began an investigation into Maley. Pursuant to company policy, Maley was suspended from employment pending the outcome of the investigation. As part of the investigation, Lama and Olmo interviewed Planadeball, among other employees in the Río Grande office. Planadeball told them that Maley had been sexually harassing Miles and Pérez, that he had asked an employee to purchase Viagra and drugs for him, and that he had made "several comments that were very inappropriate." Planadeball also mentioned that Maley had criticized her work performance, had screamed at her at work, and had sent Saliceti the text message suggesting Planadeball would be fired if she did not improve. However, Planadeball did not specifically mention Maley's discriminatory remarks about Puerto Ricans and African-Americans. She said she did not "go into details" with Lama and Olmo because she feared losing her job.

After completing its investigation, Wyndham concluded that it could not substantiate the allegations against Maley. Lama did not find the testimony of Planadeball and her co-workers to be

credible. Maley was not disciplined and, after a three-day suspension, returned to his position as sales manager of the Río Grande office. Lama advised him of the need to maintain a proper work environment, and of various company policies and procedures, including the company's policy of "zero tolerance on retaliation."

On May 26, 2011, Planadeball filed a charge of discrimination against Wyndham and Maley with the Puerto Rico Department of Labor's Anti-Discrimination Unit. She alleged that she was discriminated against on the basis of race and national origin. Pérez, Miles, and Saliceti also filed discrimination charges with the Anti-Discrimination Unit.

On July 15, 2011, Maley was transferred from the Río Grande office into a sales manager position at the Wyndham Royal Vista Resort in Pompano Beach, Florida. Angela Estes became the new sales manager of the Río Grande office. Maley had no more contact with Planadeball after he was transferred, and Estes became her new supervisor.

On June 19, 2012, Planadeball filed her complaint against Wyndham and Maley[1] in the district court, alleging that she was subject to a hostile work environment on the basis of race and national origin and that she was retaliated against for complaining

---

[1] On November 7, 2012, Planadeball voluntarily dismissed all of her claims against Maley.

about Maley's conduct, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Puerto Rico law.

After filing the complaint, Planadeball was not "treated the same way at work" or "given the same opportunities at work." Estes began treating Planadeball differently from the other sales representatives. For example, Estes would ignore Planadeball and would refuse to respond to her when she had work-related questions. Estes spoke to Planadeball "[i]n a very arrogant way" and yelled at her at least three times. Estes told Planadeball that "[i]f you don't like my policies, if you don't like how things are done, you should leave."

Furthermore, before Planadeball had filed the complaint, she was provided the opportunity to work directly with existing timeshare owners. Working with existing owners was a special perk for front line sales representatives, like Planadeball, who had shown a lot of promise. However, in June and July 2012, Estes stopped allowing Planadeball to work directly with existing owners as her clients.

On April 16, 2013, Wyndham moved for summary judgment on all of Planadeball's claims. On July 16, 2013, the magistrate judge issued a recommendation to grant the motion, and the district court affirmed the recommendation summarily. This appeal followed.

**II.**

Our review of a district court's grant of summary judgment is de novo.  Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013).  In conducting our "fresh look" at the record, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor.  Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013).  Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Gerald, 707 F.3d at 16.  However, "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported summary judgment motion."  Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) (internal quotation marks omitted).

On appeal, Planadeball only challenges the district court's grant of summary judgment on her federal retaliation claim.[2]  Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment

---

[2] While Planadeball also states that she is appealing her retaliation claim under Puerto Rico Law 115, P.R. Laws Ann. tit. 29, § 194a, she provides no argument as to why the Law 115 claim was improperly dismissed.  Therefore, she has waived that claim. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("[W]e deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").

practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). As the Supreme Court explained, this "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).

Title VII retaliation claims proceed under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973). The plaintiff, first, must establish a prima facie case of retaliation by providing evidence that "[o]ne, she undertook protected conduct[;] . . . [t]wo, her employer took a material adverse action against her[;] . . . [a]nd . . . three, a causal nexus exists between elements one and two." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013) (citations omitted).

Once the plaintiff makes out this prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its actions. See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010). If the defendant carries this burden of production, the burden shifts back to the plaintiff to show that the defendant's explanation is a pretext for unlawful retaliation. See id. To defeat summary judgment, the plaintiff need not prove retaliation

by a preponderance of the evidence.  See id. at 50.  "All a plaintiff has to do is raise a genuine issue of fact as to whether [retaliation] motivated the adverse employment action."  Id. (quoting Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)) (alteration in original).

## A. Protected Conduct

Protected conduct "refers to action taken to protest or oppose statutorily prohibited discrimination."  Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (internal quotation marks omitted).  Protected conduct includes "the filing of formal charges of discrimination" as well as "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Id. (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2nd Cir. 1990)).

Planadeball contends that her protected conduct includes her complaints to Maley and Wieczerzak in February and March 2011, her complaints to Lama and Olmo in May 2011, filing a charge of discrimination against Wyndham and Maley with the Puerto Rico Department of Labor's Anti-Discrimination Unit on May 26, 2011, and filing her federal complaint in the district court on June 19, 2012.  Wyndham concedes that the complaints to Lama and Olmo, the

-11-

filing of the Anti-Discrimination Unit charge, and the filing of the complaint constitute protected conduct. However, it disagrees that Planadeball's complaints to Maley and Wieczerzak are protected conduct. With regard to Maley, Wyndham contends "that complaining to the alleged harasser" cannot be considered protected activity. With regard to Wieczerzak, Wyndham argues that Planadeball's complaints were not "specific enough to notify management of the particular type of discrimination at issue in order to constitute protected activity."

We do not need to resolve this dispute because, as explained below, even if the complaints to Maley and Wieczerzak can be considered protected conduct, Planadeball's retaliation claim still fails. Therefore, we will assume, without deciding, that Planadeball's complaints to Maley and Wieczerzak are protected conduct.

## B. Material Adverse Actions

Planadeball argues that Wyndham took a number of material adverse actions against her in retaliation for her protected activities. Material adverse actions are actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 57. However, "'petty slights or minor annoyances that often take place at work and that all employees experience'" are not material adverse actions and "consequently, fall outside the

-12-

scope of the anti-discrimination laws." Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008) (quoting Burlington N., 548 U.S. at 68); see also Burlington N., 548 U.S. at 68 ("Title VII . . . does not set forth 'a general civility code for the American workplace.'" (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998))).

Planadeball argues that the following three actions by Wyndham employees constitute material adverse actions: (1) the $4,000 chargeback on her commission check in April 2011; (2) Estes's behavior toward her, including denying her the opportunity to work with existing timeshare owners in June and July 2012; and (3) Maley's threats to fire her in April 2011.[3] We address each in turn.

### 1. The $4,000 chargeback

Wyndham concedes that the $4,000 chargeback "may constitute an adverse employment action." Yet, it argues that there is no "causal nexus" to protected conduct. Medina-Rivera, 713 F.3d at 139. Planadeball counters that causation can be inferred from the temporal proximity between the chargeback and protected conduct.

---

[3] "[R]etaliatory actions that are not materially adverse when considered individually may collectively amount to a retaliatory hostile work environment." Billings, 515 F.3d at 54 n.13 (citing Noviello v. City of Boston, 398 F.3d 76, 88-90 (1st Cir. 2005)). However, Planadeball has not presented any argument about the collective effect of these three alleged acts of retaliation. Therefore, we consider them independently.

Planadeball made informal complaints to Maley and Wieczerzak regarding Maley's behavior in February and March 2011. She then went on medical leave from March 15 to April 1. In early April 2011, a few days after she returned to work, she noticed that her commission check was subjected to a $4,000 chargeback. Planadeball argues that the close temporal proximity between her February and March 2011 complaints and the chargeback establish the causal nexus between protected conduct and this adverse action taken against her.

Planadeball is correct that "[t]emporal proximity can create an inference of causation in the proper case." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006). In order to draw such an inference, however, "there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." Id.; see also Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011) ("Where the evidence shows only that the decisionmaker knew of the complainant's protected conduct at the time the adverse employment action was taken, causation may be inferred from a very close temporal relationship between the protected activity and the adverse action.").

Planadeball has failed to make a prima facie showing of causation. There is no evidence in the record to demonstrate that the Wyndham employees who initiated the chargeback had any

-14-

knowledge of Planadeball's complaints to Maley and Wieczerzak.[4] Planadeball was informed that the chargeback was processed because corporate had cancelled her $40,000 sale and someone in corporate subsequently entered into a sale with the same client and received the commission on the sale. Yet, there is no evidence that anyone in corporate knew about Planadeball's informal complaints in February and March 2011. Furthermore, while Planadeball complained directly to Maley about the chargeback, Maley told her that he did not know why the chargeback was processed.

## 2. Estes's conduct

Wyndham also does not contest that Estes's conduct toward Planadeball in June and July 2012, including taking away her opportunity to work with existing timeshare owners, may constitute a material adverse action. However, it similarly argues that there is no evidence of a causal link between Estes's behavior and protected conduct.[5] Planadeball contends that the temporal

---

[4] Although Planadeball has presented evidence of other instances of protected conduct, her complaints to Maley and Wieczerzak are the only conduct that occurred before the chargeback was issued, and, therefore, are the only conduct that Planadeball contends establishes a causal nexus with this material adverse action.

[5] Wyndham also contends that we should not consider Estes's conduct while evaluating Planadeball's retaliation claim because Planadeball failed to amend her complaint to incorporate Estes's actions that took place after Planadeball had filed her complaint. Wyndham relies on Quevedo-Gaitan v. Sears Roebuck de P.R., Inc., a district court case in which the court disregarded evidence of age discrimination that occurred after the plaintiff had filed her complaint because she had failed to amend it. See 536 F. Supp. 2d

proximity between Estes's conduct and the filing of her complaint on June 19, 2012, establishes the requisite nexus.

Planadeball's claim fails for the same reason the chargeback claim fails. There is no evidence that Estes was aware that Planadeball had filed a complaint. Estes stated that she had "no knowledge as to the claims and allegations that Carmen Planadeball ha[d] brought against [Wyndham] in any forum." Moreover, Planadeball admitted that she does not know what information, if any, Estes had with respect to her litigation. On this record, there is simply no evidence from which a reasonable jury could infer that Estes had knowledge of Planadeball's protected activity. Therefore, Planadeball cannot establish the third element of a prima facie case of retaliation, a causal nexus between filing her complaint and Estes's actions. See Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012) ("[I]f a supervisor or other employee is unaware of the fact that a plaintiff engaged in

_____

158, 170 (D.P.R. 2008). Planadeball counters that she was not required to amend her complaint at the summary judgment stage because she was not asserting a new claim or adding a new defendant, but merely was providing additional facts to support her retaliation claim, which was already plausibly alleged in the complaint. See Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014) (A "complaint need not allege every fact necessary to win at trial, but need only include sufficient facts to make it plausible on its face."); see also id. at 286 (noting that a complaint is not "required to provide the exact details of each incident, such as the dates or the precise context of the abusive comments, to make [a retaliation] claim plausible"). We do not need to resolve this dispute. Even assuming that we can consider Estes's conduct, Planadeball's claim still fails.

protected conduct, any actions attributable to him could not plausibly have been induced by retaliatory motives.").

### 3. Maley's Threats

Finally, Wyndham contends, and the district court found, that Maley's threats toward Planadeball after she returned from medical leave in April 2011 were not a material adverse action. Maley criticized Planadeball about her work performance, screamed at her in front of her colleagues, and made multiple threats to fire her.

Planadeball argues that Maley's conduct should be considered a material adverse action, because, as the Supreme Court stated in <u>Burlington Northern</u>, material adverse actions are "not limited to discriminatory actions that affect the terms and conditions of employment," nor are they restricted to "ultimate employment decisio[ns] . . . such as hiring, granting leave, discharging, promoting, and compensating." 548 U.S. at 60, 64 (internal quotation marks omitted). Rather, they include all actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 57. This standard is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." <u>Id.</u> at 69.

We agree with Planadeball that a juror could reasonably conclude that Maley's multiple threats to fire her constitute a

material adverse action.  Construing all facts in Planadeball's favor, Maley told her to "step up or [] step out," told her co-worker Saliceti that she was the "next one who's going to be fired," and sent a text message to Saliceti stating, "[y]ou better tell [Planadeball] that either she steps up or steps out."  In our view, a reasonable juror could thus infer that these multiple, consecutive threats, stated to an employee directly and to her co-worker who passed the message to that employee, could dissuade a reasonable employee from making or supporting a charge of discrimination.  See Billings, 515 F.3d at 54-55 ("An employee who knows that, by [making a charge of discrimination], she risks . . . a threat of further, more serious discipline" for deficiencies at work "might well choose not to proceed with [such a charge] in the first place." (internal quotation marks omitted)); Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 26 (2d Cir. 2012) (holding that a reasonable juror could conclude that threatening an employee "with the loss of his job" constitutes a material adverse action).

We also find that Planadeball has established a causal link between Maley's threats and protected conduct.  The threats occurred in April 2011, at most two months after Planadeball complained to Maley and Wieczerzak about Maley's discriminatory comments.  This two-month gap between protected activity and a material adverse action is sufficiently short to establish a prima

facie case of retaliation.  See, e.g., Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007) ("We conclude that the 'temporal proximity' between appellant's allegations of discrimination in June 2002 and his termination in August 2002 is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation."); Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) (holding that the plaintiff established a prima facie case of retaliation where approximately three months had transpired between the protected conduct and the material adverse action).

Because Planadeball has made a prima facie case of retaliation based on Maley's threats, the burden shifts to Wyndham to show that it had a non-retaliatory reason for the threats.  See Mariani-Colón, 511 F.3d at 221, 223.  We find that Wyndham has satisfied this burden.  Maley's threats to fire Planadeball were made in response to her bad sales performance.  In fact, Planadeball acknowledges that Maley threatened to fire her in the context of discussing her work performance, and admits that, when the threats were made, her sales numbers "were not very good."

The burden thus shifts back to Planadeball to show that Wyndham's reason was merely pretextual.  See id.  To defeat summary judgment in a retaliation case, "'a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker.'" Sánchez-Rodríquez, 673 F.3d at 15 (quoting Randlett v. Shalala, 118

F.3d 857, 862 (1st Cir. 1997)). Here, Planadeball points only to the temporal proximity between her complaints and Maley's threats. However, this two-month period is not sufficient, by itself, to raise an inference of pretext. The timing of Maley's threats makes sense because they occurred soon after Planadeball returned to work from surgery, and at a time when her sales numbers were low. See Mariani-Colón, 511 F.3d at 224 (holding that the temporal proximity between a plaintiff's complaints of discrimination and his discharge failed to raise an inference of pretext where the timing made sense, as plaintiff was fired a few weeks after he voluntarily took unpaid leave); Sánchez-Rodríguez, 673 F.3d at 15. Because Planadeball has not pointed to any other evidence to establish pretext, her retaliation claim fails.

## III.

Planadeball has not presented sufficient evidence to establish a retaliation claim under Title VII. Hence, we affirm the district court's order granting Wyndham's motion for summary judgment.

So ordered.

-20-