# United States Court of Appeals

## For the First Circuit

No. 06-2468

SIDNEY MARIANI-COLÓN,

Plaintiff, Appellant,

v.

DEPARTMENT OF HOMELAND SECURITY,
through its Secretary, Michael Chertoff,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Circuit Judge,
Baldock,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

Mauricio Hernández Arroyo for appellant.
Isabel Muñoz-Acosta, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, Nelson Pérez-Sosa, Assistant United States
Attorney, and Thomas F. Klumper, Assistant United States
Attorney, were on brief for appellee.

December 18, 2007

[*] Of the Tenth Circuit, sitting by designation.

**BALDOCK**, **Senior Circuit Judge**.  Appellant Sidney Mariani-Colón (Mariani) is a black, Puerto Rican male who was provisionally hired as a federal air marshal, subject to his successful completion of a training program at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico.  Appellant failed to graduate from the FLETC program.  The Transportation Security Administration (TSA), a division of appellee Department of Homeland Security, ultimately terminated his employment.

Appellant brought suit in the United States District Court for the District of Puerto Rico alleging two distinct violations of Title VII.  First, appellant alleged he was discriminated against, in the course of his employment, based on his race, sex, color, and national origin.  Second, appellant asserted he was discharged in retaliation for his administrative complaints of discrimination.  The district court granted summary judgment to TSA on both claims.

Appellant raises two issues on appeal.  First, appellant challenges the district court's decision to deem appellee's statement of uncontested facts admitted because, according to the district court, appellant's response failed to comply with Local Rule 56(c).  Second, appellant appeals the district court's grant of summary judgment in favor of TSA on his Title VII claims for discrimination and retaliation.

-4-

We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## I.

At the outset, appellant challenges the district court's determination that his response to TSA's motion for summary judgment failed to comply with Local Rule 56(c). Specifically, he challenges the district court's order deeming appellee's statement of uncontested facts thereby admitted. See D.P.R.R. 56(c). We review the district court's application of a local rule for an abuse of discretion. See Crowely v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004). A district court may forgive a party's violation of a local rule, but we will "review deferentially its refusal to do so." Id.

Local Rule 56(c) requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007). If the party opposing summary judgment fails to comply with Local Rule 56(c), "the rule permits the district court to treat the moving party's statement of facts as uncontested." Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005).

The purpose of this "anti-ferret rule" is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. Id.; see also Cabán Hernández, 486 F.3d at 7. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given case to the district court. See Cabán Hernández, 486 F.3d at 8; Alsina-Ortiz, 400 F.3d at 80. Given Local Rule 56(c)'s important purpose, this Court has repeatedly upheld its enforcement, stating that litigants ignore it "at their peril." Cabán Hernández, 486 F.3d at 7; see also Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).

In this case, appellant attempts to "confess and avoid" by admitting that his pleading fails to admit, deny, or qualify each of appellee's assertions of fact, while arguing that his alternative statement of facts fulfills the spirit of the local rule. Cabán Hernández, 486 F.3d at 7. This Court has previously held that submitting an "alternate statement of facts," rather than admitting, denying, or qualifying a defendant's assertions of fact "paragraph by paragraph as required by Local Rule 56(c)," justifies the issuance of a "'deeming' order," which characterizes defendant's assertions of fact as uncontested. Id. Consequently, we uphold the district court's decision to

treat appellee's statement of facts as uncontested.[1] Nonetheless, we conclude that, even absent a deeming order, the district court properly granted summary judgment in this case.

II.

We proceed to summarize the sequence of events related to appellant's claims in the light most favorable to him. See Suarez v. Pueblo Intern, Inc., 229 F.3d 49, 53 (1st Cir. 2000) ("[W]e must view the entire record in the light most hospitable to the party opposing summary judgment . . . ."). Appellant worked as a correctional officer at the Metropolitan Detention Center, a federal prison facility in Guaynabo, Puerto Rico. In May 2002 he applied for, and was granted, a provisional appointment as a federal air marshal. This appointment was conditioned on appellant's successful completion of a training program at FLETC. Upon successful completion of the program, candidates serve an additional twelve month probationary period before becoming permanent employees of the Federal Air Marshal Service (FAMS). FAMS is under the purview of TSA.

During the hiring process, appellant filled out a duty

---

[1] "This, of course, does not mean the unopposed party wins on summary judgment; that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Torres-Rosado, 335 F.3d at 4.

location preference form. The form provided a list of available duty stations and appellant was able to rank his top eight choices. Out of the duty stations then available, appellant ranked New York, New York as his first choice. Consequently, TSA assigned appellant to its New York office. Later candidates were provided with a different list of possible duty stations. Appellant learned that some of these candidates had been able to list Miami on their preference forms. Subsequently, appellant requested a transfer to this location. TSA denied his request.[2]

One hundred and thirty nine candidates, including appellant, started service with FAMS on May 12, 2002.[3] Based on a list of qualifying factors, TSA gave sixty-five of these candidates, including appellant, a base annual salary of $36,400. Thus, TSA provided appellant with the same base salary as approximately forty-seven percent of federal air marshal candidates entering service at this time. TSA assigned seventy four candidates, or

---

[2] Appellant does not allege that TSA allowed other similarly situated candidates to transfer. We, therefore, decline to consider this matter further. See United States v. Soler, 275 F.3d 146, 155 n.5 (1st Cir. 2002)(noting that arguments not developed on appeal are waived).

[3] The record does not reflect the race of these candidates. Therefore, the Court cannot construct a racial distribution of basic pay offered to candidates who began service at the same time as appellant.

approximately fifty-three percent of the candidates entering service on May 12, 2002, an annual base salary greater than $36,400.

While at FLETC, appellant experienced difficulties with his weapons training. Several incidents, involving the scoring of a target and an offhand comment appellant made relating to another individual shooting appellant's target for him, led certain FLETC officials to question appellant's integrity. Appellant did, however, achieve a passing score on at least one firearms test. Nevertheless, appellant's problems concentrating, and his apparent violation of several safety regulations while on the shooting range, led FLETC instructors to place him on "safety watch." This resulted in appellant being more closely monitored. Appellant, however, was unaware that he was on safety watch. After incidents in which instructors alleged appellant improperly used deadly force and pointed his gun down range while another student was manually adjusting a target, FLETC officials suspended him from further firearms training.

As a result of this suspension, appellant failed to graduate from FLETC. TSA placed him on administrative leave and appellant returned to Puerto Rico in June 2002. Shortly thereafter, appellant contacted TSA's human resources department and the Equal Employment Opportunity Commission

(EEOC), alleging he was the subject of illegal discrimination. After appellant made these allegations of discrimination, TSA offered him an administrative position in New York. No record evidence suggests appellant accepted this administrative position.[4]

Instead, appellant requested to be put on sick leave. TSA granted this request. Appellant used up all of his sick leave and vacation time. Eventually, appellant went on unpaid leave. In August 2002, TSA sent appellant a termination letter, explaining that he was being terminated during his probationary period for failure to meet the requirements of his conditional appointment as a federal air marshal. More specifically, the letter referenced appellant's failure to graduate from the FLETC program due to multiple safety violations, appellant's failure to comprehend the proper use of deadly force, and the incident in which appellant allegedly asked another person to fire at his target in order to increase his shooting score.

### III.

Appellant raises two claims under Title VII. First, appellant alleges TSA discriminated against him by treating him differently than other federal air marshal candidates.

---

[4] Appellant merely alleges he requested that TSA send him a description of the position and the salary he would receive.

Appellant argues this disparate treatment is evidenced by TSA giving him: 1) fewer placement options, 2) less pay, and 3) harsher discipline, based on his race, sex, color, and national origin.  Second, appellant claims TSA fired him in retaliation for his administrative complaints concerning this discrimination.

We review a district court's grant of summary judgment de novo "based on the record as it stood before the district court."  Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 54 (1st Cir. 2006).  In conducting our review, we "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Suarez, 229 F.3d at 53.  We may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation."  Id.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although employment discrimination cases deal with "elusive concepts such as motive or intent," this standard compels summary judgment if the non-moving party rests his case "merely upon conclusory allegations,

-11-

improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000).

A.

We first address appellant's Title VII discrimination claim. Disparate treatment cases "ordinarily proceed under the three-step, burden-shifting framework" outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). First, the plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. See Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003). Second, if the plaintiff makes out this prima facie case, the defendant must articulate a legitimate, nondiscriminatory explanation for its actions. See id. Third, if the defendant carries this burden of production, the plaintiff must prove, by a preponderance, that the defendant's explanation is a pretext for unlawful discrimination. See id. The burden of persuasion remains at all times with the plaintiff. See Sher v. U.S. Dep't of Veterans Affairs, 488 F.3d 489, 507 (1st Cir. 2007).

Generally, a plaintiff establishes a prima facie case of discrimination by showing: 1) he is a member of a protected class, 2) he is qualified for the job, 3) the

employer took an adverse employment action against him, and 4) the position remained open, or was filled by a person with similar qualifications. See Kosereis, 331 F.3d at 212-13. This burden is "not onerous," as only a "small showing" is required. Id. at 213; see also id. (noting that comparative evidence is treated as part of the pretext analysis, not as part of the plaintiff's prima facie case). In this case, appellant is a black Puerto Rican male and thus is a member of a protected class. We assume he was qualified for a provisional appointment as a Federal Air Marshal. Further, appellant has shown that TSA took at least one adverse employment against him (i.e., he was terminated). Finally, appellant's position was undoubtedly filled by someone with similar qualifications. We, therefore, assume that appellant has established a prima facie case of discrimination.

Next, we consider the government's nondiscriminatory rationales for its treatment of appellant. In regard to placement options, the government argues that no candidate who filled out a placement form at the same time as appellant was allowed to select Miami, Florida as a possible duty station. Concerning pay, the government claims that under an established list of neutral factors appellant's experience did not entitle him to a higher rate of basic

pay. As to discipline, the government alleges that appellant's history of learning difficulties, serious safety violations, and untrustworthy behavior justified not only heightened monitoring of appellant but also his eventual suspension from the FLETC program. We conclude that the government has provided ample nondiscriminatory justifications for its actions.

Now we must consider the evidence appellant has presented to show that the government's stated reasons for its actions are pretextual. See Kosereis, 331 F.3d at 213 (stating that, as compared to a court's consideration of whether a plaintiff has established a prima facie case, "pretext analysis . . . is more demanding"). Most of appellant's proffered evidence of disparate treatment consists of either his own personal observations, or conversations he had with other trainees, which led him to believe he was the target of illegal discrimination. We, therefore, discuss generally the relevance of these personal observations and conversations to appellant's showing of pretext.

Our review of appellant's statements, concerning his experiences at FLETC, assures us that they do not contain "adequate specific factual information based on personal knowledge," to create a genuine issue of material fact.

Quinones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006). On the contrary, these statements merely reflect appellant's "subjective speculation and suspicion" that he was treated unfairly. Id. Proof of more than appellant's subjective belief that he was the target of discrimination, however, is required. In order to establish a disparate treatment claim, a plaintiff must show that others "similarly situated to him in all relevant respects were treated differently by the employer." Kosereis, 331 F.3d at 214.

First, appellant offers no evidence whatsoever that TSA provided other trainees going through the hiring process at the same time as appellant a more comprehensive list of placement options. Second, the only hard evidence appellant presents in regard to pay demonstrates that TSA granted nearly half of the candidates who entered service with appellant the same amount of basic pay appellant received. This statistical evidence does not indicate that appellant was the target of illegal discrimination.

Third, appellant alleges that a female candidate with concentration problems, similar to his own, was disciplined less harshly. He also claims that other candidates who committed safety violations, such as failing to properly store a weapon, were not punished. In addition, appellant argues that another trainee, who had difficulties during

-15-

weapons training, was allowed to remain at FLETC until he passed the firearms course.

What appellant has wholly failed to show, however, is that any of these candidates engaged in rule violations that were of the same level of seriousness as the offenses with which he was charged (i.e., that they were similarly situated). See Kosereis, 331 F.3d at 214. Instead, appellant focuses on contesting his instructor's assertions that his performance was unacceptable. In evaluating whether an employer's stated reasons for an adverse employment action are pretextual, however, our concern is not whether appellant was actually performing below expectations, but whether his employer "believed that [he] was." Feliciano de la Cruz, 218 F.3d at 7.

Appellant engages in much speculation. But he has failed to present reliable comparative evidence suggesting the government's actions were based not on his perceived failings, but on discriminatory animus. Cf. Ortiz García v. Toledo Fernández, 405 F.3d 21, 24 (1st Cir. 2005). Consequently, appellant cannot establish pretext in regards to his unwarranted discipline claim.[5]

---

[5] Appellant also argues that: 1) one of his supervisors, Jerry Alicea, was not aware of the complaints concerning him, and 2) he never received a written warning. Appellant fails to explain, however, how these allegations

(continued...)

To survive a defendant's motion for summary judgment on a discrimination claim, a plaintiff must produce sufficient evidence to create a genuine issue of fact as to two points: 1) the employer's articulated reasons for its adverse actions were pretextual, and 2) the real reason for the employer's actions was discriminatory animus based on a protected category. See Quinones, 436 F.3d at 289-90; Feliciano de la Cruz, 218 F.3d at 6. Appellant has failed to make the first required showing that the government's stated reasons for its actions were pretextual. Therefore, his Title VII discrimination claim fails.

B.

We next consider appellant's Title VII retaliation claim. Title VII retaliation claims also proceed under the burden-shifting framework laid down in McDonnell Douglas. See Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 74, 81 & n.4 (1st Cir. 2007); supra Part III.A (describing this framework). In order to establish a prima facie case of

---

[5](...continued)
support his claim of disparate treatment. For instance, appellant does not allege that all supervisors were generally aware of problems concerning all candidates, or that it was customary for candidates to receive written warnings. Because appellant has failed to develop these arguments, we consider them waived. See United States v. Jíminez, 498 F.3d 82, 88 (1st Cir. 2007) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.").

retaliation, a plaintiff must establish three elements. First, the plaintiff must show that he engaged in a protected activity. Id. at 81. Second, the plaintiff must demonstrate he suffered a materially adverse action, which caused him harm, either inside or outside of the workplace. See id. The impact of this harm must be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. See id. Third, the plaintiff must show that the adverse action taken against him was causally linked to his protected activity. See id.

In this case, appellant undoubtedly engaged in a protected activity when he contacted TSA human resources department and the EEOC alleging he was the target of illegal discrimination. Furthermore, appellee's termination of appellant was a materially adverse action sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination.[6] In dispute is whether appellant has shown a causal connection between his allegations of

---

[6] Appellant also argues that various happenings at FLETC support his claim for retaliation. Because these events occurred before appellant engaged in activity protected by Title VII (i.e., before appellant complained of discrimination), we do not address these claims. See Torres-Negrón v. Merck & Co., 488 F.3d 34, 44 (1st Cir. 2007) (explaining that an employee engages in protected activity, for purposes of a Title VII retaliation claim, by opposing a practice made unlawful by Title VII, or by participating in any manner in an investigation or proceeding under Title VII).

discrimination and his subsequent termination. We conclude that the "temporal proximity" between appellant's allegations of discrimination in June 2002 and his termination in August 2002 is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation. Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006).

In support of appellant's termination, the government points out that appellant never accepted the administrative position offered to him in New York, nor reported for duty, despite having exhausted his leave. The government further argues that appellant failed to meet the terms of his conditional appointment as a federal air marshal. Appellant's failure to report for duty upon exhaustion of his leave, and his failure to meet the conditions of his original appointment as a federal air marshal, represent legitimate, non-retaliatory reasons for appellant's discharge. Consequently, we conclude the government has offered a non-retaliatory justification for appellant's dismissal that is sufficient to overcome appellant's prima facie case of retaliation.

A more exacting examination of the sequence of events leading to appellant's discharge shows that Mariani was fired a few weeks after he went on unpaid leave. Given

appellant's continued failure to accept an alternative position with TSA and return to work, the temporal proximity between appellant's complaints of discrimination and his discharge fails to raise an "inference of retaliatory motive." Colburn v. Parker Hannafin, 429 F.3d 325, 338 (1st Cir. 2005). Rather, appellant's termination at this time presumably reflects TSA's judgment that a more reliable employee could better fill the position offered to Mariani. See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 111 (1st Cir. 2006)(concluding that an employee's "failure to return to work by a particular date" constituted a valid reason for her termination). Under these facts, the temporal proximity between appellant's complaints of discrimination and his termination does not show that the government's justifications for firing appellant are pretextual.

Appellant offers no additional evidence to show that the reasons the government offered for his termination are pretextual. While appellant engages in much speculation and conjecture, a plaintiff cannot defeat summary judgment by relying on "conclusory allegations, or rank speculation." Fontánez-Núñez, 447 F.3d at 55. To defeat summary judgment, a plaintiff must make a colorable showing that an adverse action was taken "for the purpose of retaliating" against

him.  Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997).  Appellant has not made this showing.  Consequently, his Title VII claim for retaliation also fails.

Affirmed.