# United States Court of Appeals
## For the First Circuit

No. 25-1312

JOHN B. CRUZ CONSTRUCTION CO., INC.,

Plaintiff, Appellant,

v.

BEACON COMMUNITIES CORP.; BEACON COMMUNITIES SERVICES LLC;
BEACON LENOX LLC; BEACON LENOX 2 LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Montecalvo, Rikelman, and Aframe,
Circuit Judges.

Carolyn M. Crowley, with whom Harry T. Daniels, Sarah A.
O'Brien, Henry T. Gaylord, and Barclay Damon, LLP were on brief,
for appellant.

Michael S. Gardener, with whom Samuel M. Starr, Clare Prober,
and Mintz Levin Cohn Ferris Glovsky & Popeo PC were on brief, for
appellees.

March 4, 2026

**RIKELMAN**, <u>Circuit Judge</u>. After Beacon Communities Corporation did not invite John B. Cruz Construction Company to bid on a major housing redevelopment project in Boston, Cruz Construction sued Beacon.[1] It claimed that by excluding it from the bidding process, Beacon had broken a promise made years earlier during a telephone call between the heads of the two organizations. A black-owned company, Cruz Construction also claimed that Beacon's decision to exclude it from the bidding process amounted to racial discrimination in violation of 42 U.S.C. § 1981. The district court granted summary judgment to Beacon, concluding that there was not enough evidence for a reasonable jury to find that Beacon made any enforceable promise during the critical phone call or that it had discriminated against Cruz Construction. Because we agree with the district court's analysis of the summary judgment record, we affirm.

## I. BACKGROUND

### A. Relevant Facts[2]

In July 2015, the Boston Housing Authority (BHA) announced the rehabilitation of two public housing sites -- Lenox

---

[1] We use "Beacon" to refer collectively to all defendants-appellees in this case.

[2] In reviewing the district court's summary judgment ruling, we recount the facts in the record in the light most favorable to Cruz Construction, drawing all reasonable inferences in its favor. <u>See</u> <u>Appleton</u> v. <u>Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 145 F.4th

and Camden -- in the lower Roxbury neighborhood of Boston.  The Lenox project involved 285 units of federally subsidized public housing, whereas the Camden project involved 72 units of state subsidized public housing.  BHA issued one Request for Proposals (RFP) for both sites, "invit[ing] qualified real estate development firms to submit proposals for the renovation/revitalization of its Lenox and Camden public housing sites."

BHA awarded "the Lenox and Camden redevelopment project" to Beacon in January 2016.  Under the terms of the RFP, Beacon was required to "optimize construction and long-term employment opportunities through the redevelopment process," including for "minority and women-owned business enterprises[ ] and minority and women workers."  To that end, BHA encouraged Beacon to hire a minority-owned business entity as the general contractor and suggested Cruz Construction, a black-owned general contractor based in Boston.

At BHA's suggestion, Beacon's Chief Executive Officer Pamela Goodman called John Cruz, the President of Cruz Construction, in July 2016.  According to Goodman, she asked Cruz if his company "would be interested in providing pre-construction services on the Camden [p]roject and the Lenox [p]roject."  In her

_____

177, 181 (1st Cir. 2025) (citing Sutherland v. Peterson's Oil Serv., Inc., 126 F.4th 728, 734 (1st Cir. 2025)).

affidavit, she testified that she was "clear" that her invitation did not mean Cruz Construction would "necessarily be invited to bid on or be selected as the general contractor for either of the [p]rojects." According to Cruz, however, Goodman did not mention pre-construction services in their July 2016 phone call. Instead, he recalled that she invited Cruz Construction to "serv[e] as the general contractor member of the [p]roject team" for both Lenox and Camden under a "negotiated bid price arrangement." As Cruz attested in his own affidavit, Goodman agreed that "Cruz Construction's price would be acceptable as long as it was less than or within 5% of other prices Beacon obtained."

After the July 2016 telephone call, Cruz Construction began participating in the redevelopment project. It attended a "Lenox-Camden" project team meeting later that month, on July 26. The meeting minutes noted that "[t]he [p]roject [was] separated into two pieces -- Lenox and Camden." That summer, Cruz Construction also began providing pre-construction services for both Lenox and Camden. During the second team meeting, in October 2016, Cruz Construction was asked "to break out [the] cost of Lenox and Camden separately."

Five months into the parties' relationship, a representative of the Carpenters' Union called Beacon and left a voicemail, indicating "he knew that Cruz was tapped for Lenox St., and asking how the Carpenters' Union c[ould] help." Beacon's

Development Director forwarded the voicemail to Cruz, asking him to "follow-up with" the Carpenters' Union and "[l]et [Beacon] know how the conversation [went]." Cruz reported back by email that he had updated the Carpenters' Union representative "from [his] point of view as the contractor," and Goodman noted in an internal email to another Beacon employee that they "should keep this clearly in [C]ruz's court."

By 2018, Beacon was ready to select a general contractor for Camden. Under its agreement with BHA, Beacon was obligated to "issu[e] a[n] [RFP] . . . to at least three general contractors" and select one based on "qualifications[,] cost, . . . general conditions, overhead, and project mark-ups." Following its mandate from BHA, Beacon issued an RFP to Cruz Construction, Bilt-Rite, and Colantonio, Inc. Beacon's RFP plainly stated that Beacon would select a general contractor based on its analysis of the contractor's qualifications, experience, past performance, financial strength, ability to meet the required schedule, competitiveness of costs, and "such other criteria as [Beacon] may determine, in its sole judgment." The parties do not dispute that the scope of this RFP was limited to Camden and did not include Lenox.

Both Cruz Construction and Bilt-Rite responded to the RFP, with Bilt-Rite submitting a proposal that was two million dollars higher than Cruz Construction's. At the time, the Camden

development team[3] worried that Cruz Construction's bid was too low, indicating that it was likely "missing something." The team also noted that Cruz Construction's proposal omitted a scope of work and contained an inaccurate schedule. Although these deficiencies raised concerns for the development team about Cruz Construction's readiness for the job, Beacon nevertheless awarded the project to Cruz's firm. The parties began negotiating a contract for Camden, and as part of that process, in August 2018, Beacon sought information about Cruz Construction's bonding capacity for both Lenox and Camden.

While the parties were negotiating the Camden contract, pre-construction work continued on Lenox. During the pre-construction phase, Beacon submitted a Project Notification Form about Lenox to the Boston Planning & Development Agency in September 2018. In an appendix to that form, Beacon listed Cruz Construction as the "Construction Manage[r]" for the Lenox project. At that time, Cruz Construction was still performing pre-construction services for Lenox.

After months of negotiations, the parties signed a written contract in December 2018 establishing Cruz Construction

---

[3] The "development team" consisted of staff members from Beacon itself as well as individuals from Waypoint, the independent project manager, and The Architectural Team, the independent architecture firm.

as the Camden general contractor. Construction on Camden began in January 2019.

Although Beacon's CEO publicly celebrated the partnership with Cruz Construction at a January 2019 launch event, complaints about Cruz Construction's work on the Camden project were already escalating behind the scenes. The development team pointed to schedule delays, quality control issues, incorrect work, poor communication, and a misunderstanding of the construction process. Over the next several months, Goodman directly and repeatedly expressed to Cruz her disappointment in his firm's performance. Oscar Carlos, Cruz Construction's Vice President, substantiated many of the development team's complaints, testifying that they were factually accurate. A Beacon executive who attended weekly job site meetings and visited Camden at other times during the construction process testified that her "worst experience working with a contractor was with Cruz Construction . . . on the Camden [p]roject."

In the late spring or early summer of 2019, Beacon decided that it would not invite Cruz Construction to bid on Lenox. Goodman informed Cruz of that decision in a September 2019 meeting, explaining that the decision stemmed from Cruz Construction's performance issues on Camden. Cruz did not complain to Beacon or protest the decision at the time.

After issuing an RFP for Lenox to three general contractors (excluding Cruz Construction) and reviewing the submitted bids, Beacon selected D.F. Pray, Inc., a white-owned company, as the Lenox general contractor. Again, there is no evidence in the record that Cruz protested to Beacon when it selected Pray as the general contractor for Lenox.

## B. Procedural History

Cruz Construction filed this lawsuit in Massachusetts state court in 2023. It alleged various state-law contract and quasi-contract claims, as well as a statutory claim for deceptive practices. See Mass. Gen. Law ch. 93A, Section 11 ("Chapter 93A"). It also alleged a federal claim, contending that Beacon discriminated against it because of its "status as a 100% black-owned entity," in violation of 42 U.S.C. § 1981. Beacon removed the case to federal court.[4]

After discovery, Beacon moved for summary judgment on all claims, and the district court granted its motion. See John B. Cruz Constr. Co. v. Beacon Cmtys. Corp., No. 23-cv-12268, 2025 WL 688959, at *1 (D. Mass. Mar. 4, 2025). The court held that there was "no evidence of the existence of a binding

---

[4] Because of the federal claim, the district court had supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law claims as the claims all "derive[d] from a common nucleus of operative fact." R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 92 F.4th 330, 345-46 (1st Cir. 2024) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997)).

implied-in-fact contract guaranteeing the selection of Cruz Construction as the general contractor for either the Camden or Lenox phases of the [p]roject," despite "Cruz's unsupported asseverations to the contrary." Id. at *3. For similar reasons, the court rejected Cruz Construction's quasi-contract and Chapter 93A claims. See id. at *4-6. The court also ruled that Cruz Construction's discrimination claim was meritless because the summary judgment record included "no evidence to . . . suggest that race played any role in Beacon's decision to discontinue work with Cruz Construction." Id. at *6.

Cruz Construction timely appealed.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment to Beacon, considering the facts in the record in the light most favorable to Cruz Construction and drawing all reasonable inferences in its favor. See Rodrique v. Hearst Commc'ns, Inc., 126 F.4th 85, 89 (1st Cir. 2025). We will affirm only if there is no genuine dispute as to any material fact and Beacon is entitled to judgment as a matter of law. See Cruz-Cedeño v. Vega-Moral, 150 F.4th 1, 5 (1st Cir. 2025). "A genuine dispute is one where 'the evidence is such that a reasonable jury could resolve the point in [Cruz Construction's favor] and a material fact is, as the name suggests, a fact that 'has the potential of affecting the outcome of the case.'" Hamdallah v. CPC Carolina

- 9 -

PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (quoting Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021)).

To survive summary judgment, a party must highlight "specific facts showing that a trier of fact could reasonably find in [its] favor." Johnson v. Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (quoting Brader v. Biogen Inc., 983 F.3d 39, 53 (1st Cir. 2020)). "[C]onclusory allegations, improbable inferences, and unsupported speculation" do not count. Id. (quoting Brader, 983 F.3d at 53). Pointing to "[t]he mere existence of a scintilla of evidence" is also not enough to defeat summary judgment. Satanic Temple, Inc. v. City of Boston, 111 F.4th 156, 167-68 (1st Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

### III. DISCUSSION

Cruz Construction contends that it had enough evidence to proceed to trial on every claim in its complaint. After reviewing the summary judgment record, however, we agree with the district court that Cruz Construction failed to create a triable factual issue on any of its claims.

### A. Contract and Quasi-Contract Claims

In arguing that it had an enforceable agreement to serve as the Lenox general contractor, Cruz Construction relies on the alternative theories of implied-in-fact contract and promissory

- 10 -

estoppel. Specifically, it maintains that an implied-in-fact contract can be inferred from the parties' conduct here or, alternatively, that "the parties agreed orally that Cruz would be the general contractor" for both Lenox and Camden in the July 2016 telephone call. We analyze each of these arguments in turn.

## 1. Implied-in-Fact Contract

Under Massachusetts law, an implied-in-fact contract is exactly what the term suggests -- a contract that can be implied from the parties' actions rather than any express oral or written agreement. See Sullivan v. O'Connor, 961 N.E.2d 143, 153 (Mass. App. Ct. 2012) ("In the absence of an express agreement, a contract implied in fact may be found to exist from the conduct and relations of the parties." (quoting LiDonni, Inc. v. Hart, 246 N.E.2d 446, 449 (Mass. 1969))). To prove a breach of an implied-in-fact contract, Cruz Construction had to demonstrate the usual elements of a breach of contract claim: "there was an agreement between the parties; the agreement was supported by consideration; [Cruz Construction] was ready, willing, and able to perform [its] part of the contract; [Beacon] committed a breach of the contract; and [Cruz Construction] suffered harm as a result." Squeri v. Mount Ida Coll., 954 F.3d 56, 71 (1st Cir. 2020) (quoting Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016)). Just as with any contract claim, to prevail, it was "essential" for Cruz Construction to identify facts "showing the existence of the

- 11 -

contract and the legal effect thereof."  Id. (quoting Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co., 267 N.E.2d 918, 919 (Mass. 1971)).

Cruz Construction points to five record facts to support its argument that it had a triable implied-in-fact contract claim: (1) it attended team meetings for Lenox and Camden; (2) it provided pre-construction services for Lenox and Camden; (3) it responded to an external inquiry about Lenox as "the contractor"; (4) it provided evidence of its bonding capacity for both Lenox and Camden; and (5) it was listed by Beacon in a 2018 Lenox filing as the "Construction Manage[r]."  These aspects of the record, however, are insufficient to create a genuine dispute of material fact about whether the parties' conduct implied an agreement that Cruz Construction would be the Lenox general contractor.

The first two pieces of evidence that Cruz Construction highlights do not support its claim.  The meeting minutes do not indicate that Cruz Construction was at the team meetings as the Lenox "general contractor," and they make clear that Lenox and Camden were "separated into two pieces." Cf. Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 127-28 (1st Cir. 1990) (finding no implied contract under Massachusetts law, in part, because meeting minutes did not make any mention of the alleged agreement formed at that meeting).  As to the pre-construction services point, Cruz himself conceded that

providing pre-construction services and serving as a general contractor are two different roles.

The last three pieces of evidence -- Cruz's response to the Carpenters' Union in late 2016, Beacon's inquiry in August 2018 about Cruz Construction's bonding capacity, and Beacon's inclusion of Cruz Construction in the September 2018 Lenox filing -- do offer "a scintilla of evidence" in Cruz Construction's favor. But "a scintilla of evidence" is not enough to "defeat summary judgment." Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts., 87 F.4th 62, 80 (1st Cir. 2023) (quoting Barreto-Rosa v. Varona-Mendez, 470 F.3d 42, 45 (1st Cir. 2006)).

To be sure, a reasonable jury could infer from this evidence that Beacon had, at one point, considered working with Cruz Construction on Lenox. But a reasonable jury could not conclude -- based on one short email from Cruz to Beacon in late 2016 and Beacon's two actions in 2018 -- that Cruz Construction had an enforceable contract to be the Lenox general contractor years later, regardless of how it performed on Camden. Indeed, this evidence concerns the parties' conduct before construction on Camden had even started.

Further, Cruz's failure to protest when Goodman informed him in 2019 that his firm would not be asked to bid on Lenox is entirely inconsistent with the existence of an enforceable

- 13 -

contract. So is the fact that Cruz did not assert any such contract until he filed this lawsuit four years after Beacon's decision.[5] Thus, we agree with the district court that, based on the parties' conduct, "there is no basis on which a reasonable juror could find that Cruz Construction had been awarded an implied-in-fact contract for it to serve as the general contractor for the Lenox phase of the [p]roject." John B. Cruz Constr. Co., 2025 WL 688959, at *4.

## 2. Promissory Estoppel

In Massachusetts, a promissory estoppel claim "is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (quoting R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995)). Thus, to prevail, Cruz Construction would have to show that "(1) [Beacon] [made] a promise which [it] should [have] reasonably expect[ed] to induce action or forbearance of a definite and substantial character on the part of [Cruz Construction], (2) the promise [did] induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." Id. (quoting Carroll v. Xerox

---

[5] Beacon argues that Cruz Construction's years-long delay constitutes a waiver of "any ability to assert [this] claim." Because we conclude that, in any event, the claim fails on the merits, we need not address this argument.

Corp., 294 F.3d 231, 242 (1st Cir. 2002)).  Also, to succeed on this claim, Cruz Construction would have to demonstrate an "agreement between the parties on the material terms," beyond "expectations and negotiations."  Lambert v. Fleet Nat'l Bank, 865 N.E.2d 1091, 1095 (Mass. 2007) (citations omitted).

In Cruz's affidavit submitted in opposition to Beacon's summary judgment motion, he contended that he and Goodman agreed on a negotiated bid price contract in the July 2016 telephone call. Under that alleged oral contract, Cruz Construction would "be the Lenox/Camden general contractor" as long as its bid "was less than or within 5% of other prices Beacon obtained."

Critically, however, Cruz admitted at his deposition that Goodman never actually made any such promise during this phone call.  He testified:

> Q: You keep saying "if we were competitive, we would get the job." Is that something that somebody at Beacon told you?
>
> A: No, not specifically, but we knew the challenge for us was to be either competitive, whatever you want to call that, or the low bidder. . . . [T]he intent was if I was competitive, that was the intent, I would get the job.  If I wasn't competitive, again, I'm not going to get it.
>
> . . .
>
> Q: Did Pam Goodman say to you if you're competitive, you will be the general contractor on the Lenox Apartments construction?  Did she say that to you?

- 15 -

> A: <u>No</u>. But she didn't say it on Camden specifically either, but the intent was there.[6]

(Emphases added.) Based on this admission, a reasonable jury could not find that Beacon made the promise that Cruz Construction alleges in the July 2016 conversation. Instead, even viewing the record in the light most favorable to Cruz Construction, the evidence as to the Lenox project points to nothing more than "the kind of vague and general discussion that is common in the preliminary stages of business dealings." See <u>Lambert</u>, 865 N.E.2d at 1096. As a matter of law, such a discussion "does not rise to the level of an enforceable agreement." <u>Id.</u>

And even if Beacon had made an oral promise consistent with a "negotiated bid price" arrangement for Lenox, Cruz Construction does not spell out any of the other material terms for this alleged contract. Although a binding contract can be formed even if there are "undefined or unspecified terms," the

---

[6] To the extent Cruz testified to the contrary in his later affidavit, we note that "when an interested witness has given clear answers to unambiguous questions at deposition, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." <u>Pena</u> v. <u>Honeywell Int'l, Inc.</u>, 923 F.3d 18, 30 (1st Cir. 2019) (citation modified) (quoting <u>Colantuoni</u> v. <u>Alfred Calcagni & Sons</u>, 44 F.3d 1, 4-5 (1st Cir. 1994)).

Even putting aside Goodman's different recollection of the July 2016 phone call, a reasonable jury could not find in Cruz Construction's favor on the promissory estoppel claim, given Cruz's concessions during his deposition.

- 16 -

parties must at least commit to the "material terms." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 89 (1st Cir. 2018) (first quoting Situation Mgmt. Sys., Inc., v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000); and then quoting Lambert, 865 N.E.2d at 1095). When they do not, the contract is "too indefinite to be enforced." Lambert, 865 N.E.2d at 1096 (quoting Cygan v. Megathlin, 96 N.E.2d 702, 704 (Mass. 1951)). As the district court noted, Cruz Construction "does not allege any discussion, much less agreement, about the conditions governing Cruz Construction's services, the materials it would use, the time for performance, or the amount it would be paid for its work." John B. Cruz Constr. Co., 2025 WL 688959, at *3. We do not decide in this case which exact terms would be considered "material" for a contract of this nature. But we do conclude that the vague and conclusory terms Cruz Construction points to fall far short of what would be required for an enforceable contract under Massachusetts law. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 229 (1st Cir. 2005) (affirming the district court's determination that the terms were not "sufficiently determinate to constitute a binding contract" under Massachusetts law).

Lastly, that the parties eventually executed a final written contract for Camden in late 2018 undermines Cruz Construction's promissory estoppel claim based on the July 2016 call. "Under Massachusetts law of contract, it is well established

- 17 -

that 'the fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'" TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 (1st Cir. 2007) (quoting Rosenfield v. U.S. Tr. Co., 195 N.E. 323, 325 (Mass. 1935)). Thus, we agree with the district court that a reasonable jury could not find that Beacon made an enforceable promise in July 2016 that Cruz Construction would be the Lenox general contractor.

### 3. Derivative Claims

Cruz Construction also challenges the summary judgment ruling dismissing its breach of the implied covenant of good faith and fair dealing and Chapter 93A claims. Again, we agree with the district court that Massachusetts law required it to dismiss these derivative claims after it rejected Cruz Construction's implied-in-fact contract claim. As we have explained, if no contract exists, "there can be no derivative implied covenant of good faith and fair dealing" claim. Mass. Eye & Ear Infirmary, 412 F.3d at 230. Similarly, Cruz Construction's Chapter 93A claim also stemmed from its breach of implied contract claim, "in that it allege[d] 'unfair and deceptive conduct surrounding the breach of contract.'" Gattineri v. Wynn MA, LLC, 93 F.4th 505, 513 (1st Cir. 2024) (alteration in original) (quoting Park Drive Towing, Inc. v. City of Revere, 809 N.E.2d 1045, 1050 (Mass. 2004)). Thus,

- 18 -

because Cruz Construction's implied breach of contract claim failed, the district court correctly found that Cruz Construction's derivative Chapter 93A claim also failed as a matter of law. See id. at 511 ("[Under] Massachusetts law[,] . . . a Chapter 93A claim that is derivative of other failed claims must be dismissed.").[7]

## B. 42 U.S.C. § 1981 Claim

We now turn to the district court's dismissal of Cruz Construction's Section 1981 claim. Cruz Construction alleges that its removal "as the general contractor member of the Lenox [p]roject [t]eam" and inability to "bid, negotiate or otherwise compete for the Lenox general contractor work" was because of its "status as a black-owned company." According to Cruz Construction, Beacon violated Section 1981 by treating it differently from the way it treated Pray, the white-owned company that ultimately served as the Lenox general contractor.

Section 1981 "prohibits both public and private racial discrimination in certain specified activities (including the making and enforcement of contracts)." Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002). It provides that "[a]ll

---

[7] In its complaint, Cruz Construction also raised a quantum meruit claim, alleging that it had not been compensated for the pre-construction services it had provided on the Lenox project. While this appeal was pending, however, the parties "agreed to resolve the issue." Thus, we need not address the claim.

persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To prevail on a claim under Section 1981, Cruz Construction "must show that (1) [it] is a member of a racial minority; (2) [Beacon] discriminated against [it] on the basis of [its] race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts." Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013). Only the second element -- discrimination -- is in dispute here.

In evaluating a Section 1981 claim, we apply the familiar McDonnell Douglas burden shifting framework when, as here, the plaintiff does not have direct evidence of discrimination. See Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)) (explaining that "[t]he same legal framework applies to both" Title VII and 42 U.S.C. § 1981). Under that framework, to withstand summary judgment, a plaintiff must marshal evidence establishing a prima facie case of discrimination. See id. If it does so, that evidence creates a presumption of discrimination that the defendant can rebut by articulating "a legitimate, nondiscriminatory justification" for its actions. See Ray v. Ropes & Gray LLP, 799 F.3d 99, 113 (1st Cir. 2015) (analyzing Title VII claim). If the defendant successfully rebuts the presumption, the

plaintiff must show that "race was a but-for cause of its injury." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 333 (2020) (deciding causation standard under 42 U.S.C. § 1981). To meet that burden, the plaintiff must highlight record "evidence sufficient to support a finding that the [defendant's] proffered reason for [its actions] was pretextual and that the true reason was unlawful discrimination." Joseph v. Lincare, Inc., 989 F.3d 147, 158 (1st Cir. 2021) (analyzing both 42 U.S.C. § 1981 and Maine state law discrimination claims under McDonnell Douglas framework).

Beacon does not contest that, on this record, Cruz Construction had sufficient evidence to show a prima facie case of discrimination. Nor do we see any real dispute that Beacon articulated a legitimate nondiscriminatory justification for not selecting Cruz Construction to be the Lenox general contractor: the firm's poor performance on the Camden project. See Ray, 799 F.3d at 113 ("[The defendant] provided a legitimate, nondiscriminatory justification for its [actions] -- namely, [the plaintiff's] negative reviews.").[8] Thus, to proceed to trial, Cruz

_____

[8] According to Cruz Construction, Beacon has waived this "poor performance" defense because it paid in full for Cruz Construction's work as the Camden general contractor. But, as the district court pointed out, Cruz Construction relies on cases "involv[ing] contract actions in which plaintiffs sought damages arising out of defendants' alleged failure to perform fully the contract after plaintiffs made final and full payment of the

- 21 -

Construction had to demonstrate a genuine dispute of material fact as to two issues: one, whether Beacon's justification was pretextual and two, whether the real reason for its actions "was discriminatory animus." Id. (quoting Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007)). Cruz Construction was entitled to rely on the same evidence to show both pretext and discriminatory motive. See Joseph, 989 F.3d at 159.

To support its argument that the record demonstrates a genuine dispute over pretext, Cruz Construction claims that Beacon failed to investigate the complaints against it. Cruz Construction also contends that it actually performed well, pointing to the architect's certification that the Camden project had been completed according to the contract and Beacon's decision to pay it in full for that work. Again, the architect's certification and the full payment for Camden do offer a "scintilla of evidence" in Cruz Construction's favor. But this evidence is not enough to create a triable issue on pretext given that the record is replete with documented complaints about the firm's performance on Camden.

_____

contract price." John B. Cruz Constr. Co., 2025 WL 688959, at *6 n.4. Nothing in these cases precludes Beacon from citing Cruz Construction's performance as evidence of a business justification for declining to award Cruz Construction additional work. See, e.g., Barton v. Morin, 183 N.E. 170, 170 (Mass. 1932) (evaluating waiver rule as applied to contract claim by plaintiff who paid full balance and then sued defendant for allegedly failing to perform fully on the contract).

As to the complaints, the legally relevant question for summary judgment purposes is not whether the complaints were valid. Rather, the question is "whether [Beacon] believed in the accuracy" of the complaints. Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012) (citation modified). And as the district court noted, Cruz Construction does not point to any evidence suggesting that Beacon did not. See John B. Cruz Constr. Co., 2025 WL 688959, at *6 n.4.

To the contrary, the summary judgment record documents the number, breadth, and frequency of the complaints about Cruz Construction's work. Throughout construction on Camden, the development team repeatedly raised complaints about schedule delays, quality control issues, incorrect work, poor communication, and a misunderstanding of the construction process. Shortly into the construction phase, Beacon asked its independent project manager for a "summary of Camden construction issues," feeling "some urgency to start having conversations with Cruz." Beacon staff held meetings with Cruz "regarding the schedule and project in general," and repeatedly emailed the "Cruz team" to remind it of deadlines and requirements. Goodman had multiple discussions with Cruz about her disappointment in his firm's performance, and Beacon staff members submitted affidavits in support of summary judgment detailing their observations of faulty construction issues. For example, Beacon's Senior Vice President

- 23 -

of Property Management attended weekly job site meetings and made numerous other visits to the Camden property. In her view, "Cruz Construction did not meet the project schedule, had poor workmanship, and did not take into consideration how its work and failure to meet schedule obligations impacted [Camden] residents."

In response to this record, Cruz Construction contends that Beacon "resented Cruz's participation" "[f]rom the outset" and "exaggerated small issues into large ones." But in discrimination cases, courts do not "assess[] the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 8 (1st Cir. 2000) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)). That the Camden construction issues loomed "large" for Beacon reflects its business judgment and, that judgment, even if incorrect, would not be probative of discrimination.

To undermine the force of the complaints about its work, Cruz Construction points to Beacon's occasional use of unprofessional language, including swear words and an accusation that one of Cruz Construction's staff members was a "thief" after an item went missing from the worksite.[9] But Cruz Construction

---

[9] A Beacon employee claimed that a Cruz Construction employee wrongfully removed an item from the site and referred to him as a "fucking wormy bastard," a "fucking liar," and a "thief."

- 24 -

does not develop any argument that those comments had established racial overtones. See Colón-Fontánez v. Mun. of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (explaining that "offhand comments," "isolated incidents [that are not] extremely serious," and "uncomfortable," "tense" and "uncivil" interactions are insufficient to establish discrimination). A reasonable jury could not find that Beacon's concerns about Cruz Construction's work performance were pretextual based on such comments.

Cruz Construction also emphasizes that Beacon had never worked with a black-owned general contractor before its Camden partnership with Cruz Construction. But the focus under Section 1981 "is less [about] whether a pattern of discrimination existed . . . and more [on] how [Cruz Construction] was treated, and why." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993) (citation omitted). And, as the district court aptly noted, "[i]t is worth remembering that it was Beacon that initially recruited Cruz Construction to the [p]roject because it was a minority owned company, not the other way around." John B. Cruz Constr. Co., 2025 WL 688959, at *6 n.6.

Lastly, Cruz Construction argues that Beacon treated Pray more favorably by paying it separately for Lenox pre-construction services instead of wrapping that payment into

---

Statements that Cruz Construction was "fucking up" and other swear words were "common" in project meetings.

the contract fee. Cruz Construction does not contest, however, that it was compensated for the pre-construction services it provided. We therefore cannot conclude that the payment structure issue is material to the question of discriminatory treatment.

Given the evidence highlighted by Cruz Construction on appeal, we do not see how a reasonable jury could find that Beacon's decision not to select it as the Lenox general contractor for performance reasons was a pretext for racial discrimination. To that end, we also note that there is no evidence in the record that any of Cruz Construction's employees ever claimed discriminatory treatment while working on the project. We find "the absence of any such evidence here [to be] telling." See Bhatti, 659 F.3d at 72 n.14.

In the end, Cruz Construction only "points us to de minimis evidence, insufficient for a rational factfinder to infer that [Beacon's] 'actions were based . . . on discriminatory animus.'" See Ray, 799 F.3d at 117 (quoting Mariani-Colón, 511 F.3d at 223). Thus, we conclude that the district court properly granted summary judgment for Beacon on this count.

## IV. CONCLUSION

For all these reasons, we **affirm** the district court's order granting summary judgment to Beacon.